FIRST TRUST & SAVINGS BANK v. SOUTHERN INDIANA RY. CO. et al.

(District Court, N. D. Illinois, E. D.   April 11, 1912.)

No. 29,175.

1. RECEIVERS (§ 143*)—SALE OF PROPERTY—LIABILITIES OF PURCHASERS—"VOUCHERING."

The "vouchering" by a railroad company of a claim for repayment of freight charges paid, and the taking by the company of the amount of the claim as allowed for labor, supplies, equipment, and improvements and interest on bonded indebtedness, do not make the claim a lien prior to the mortgage bonded indebtedness, nor give the claimant the right to follow a specific fund into the hands of the receiver of the company and a purchaser from the receiver of the property of the company, subject to liens superior to the mortgage and bonds secured thereby, not chargeable with knowledge of the vouchering of the claim, and the creation of a lien thereby is not liable to the claimant for the amount of the claim; the "vouchering" of a claim merely meaning that the same has been investigated, passed on, and approved.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 248–251; Dec. Dig. § 142.*

For other definitions, see Words and Phrases, vol. 8, pp. 7362–7363; vol. 8, p. 7831.]

2. RECEIVERS (§ 142*)—SALE OF PROPERTY—CLAIM FOR PREFERENCE.

The court permitting a creditor after a sale by a receiver of the property of the debtor to present a claim for a preference must so restrict the claim as to work no detriment to the intervening rights of the purchaser under the rule that no one may stand by and permit a sale without asserting his rights, and thereafter assert them to the injury of the purchaser.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 248–251; Dec. Dig. § 142.*]

3. CARRIERS (§ 32*)—REBATES—PUBLIC POLICY—STATUTES.

A claim against a carrier for rebates may be resisted as against public policy or contrary to state or federal regulations, notwithstanding any agreement of the parties.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 83–85; Dec. Dig. § 32.*]

Action by the First Trust & Savings Bank, trustee, against the Southern Indiana Railway Company and others, in which the A. B. Meyer & Co. filed a petition for intervention. Petition denied.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Charles E. Pope, for petitioner.

James C. Hutchins and Lessing Rosenthal, for Chicago, T. H. & S. E. Ry. Co.

William F. Peter, for Myron J. Carpenter, receiver.

KOHLSAAT, Circuit Judge. A. B. Meyer & Co. present to the court their petition herein for leave to intervene, based upon the following facts, viz.: In the year 1902 petitioner entered into a contract with the railway company to transport coal during the years 1902 and 1903 from certain mines in Indiana to Indianapolis, at a rate of 40 cents per ton, being the then published freight rate, for a valuable consideration. Petitioner performed its part of said contract, and a large amount of coal was so transported. Thereafter the published rates were advanced, first, to 50 and again to 60 cents per ton. Petitioner was obliged to pay said advanced rates, and did so on the promise that the excess over 40 cents per ton would be refunded immediately—not as a rebate, the petition states, but as belonging to petitioner. A statement of such excess, amounting to $9,634.75, was presented as a claim to the railway company during the year 1903. On February 22, 1906, petitioner was notified by the railway company that its claim was vouchered, and would be paid by the treasurer of the railway some time in February, 1906.

The petitioner alleges, further, that a voucher was so issued to petitioner for $7,124.33, in part payment, and that, by some arrangement with the Big Four Railway Company, that company paid petitioner one-half thereof, to wit, $3,562.16, leaving a balance of $3,562.17 unpaid upon said voucher, or a balance of $6,072.59 still unpaid on said claim of $9,634.75. It does not appear that the balance of $2,510.42 was ever vouchered. Nothing further was paid upon said claim prior to the appointment of the receiver, and the amount unpaid upon said voucher was proved up as a general claim herein before the special master for $4,817.38 on July 6, 1909. On November 27, 1909, petitioner was advised by the receiver through his solicitor by letter to the effect that he did not anticipate any objection to the allowance of the claim as presented, and saying he knew of nothing further petitioner need do in the matter, that the claim would have to take its course with the other claims, and that it might be some time before results. On September 21, 1911, petitioner claims to have for the first time been advised that the claim had not been allowed as a preferred claim, and that there would be no funds with which to pay general claims, and thereupon presented its petition for leave to file an intervening petition setting forth its alleged rights and claims as a preferred creditor of said Southern Indiana Railway Company, and as having a lien and equity superior to the lien and equity of the trustee and those claiming under said general trust deed of May 1, 1906. In the meantime, and on May 27, 1910, the decree of sale in said cause was entered, wherein it is provided in article 11 thereof that:

"The purchaser shall also, as a part of the consideration and purchase price of the parcel of properties purchased and in addition to the sum bid, take said property and receive the deed or deeds therefor upon the express condition that he or his successors or assigns shall pay in cash so far as

they are not paid, satisfied, and discharged out of the purchase price paid in cash or the funds in the hands of the receiver, any unpaid costs and expenses of this cause, * * * and also all other unpaid indebtedness and liabilities contracted or incurred by the Southern Indiana Railway Company, which shall have been heretofore presented to this court, either by filing an intervening petition herein or filing a claim with the special master (appointed by the former order of this court) and which may be prior in lien or superior in equity to the general mortgage and the bonds secured thereby upon the court adjudging the same to be prior in lien or superior in equity to said general mortgage and the bonds secured thereby and directing the payment thereof."

[1] In pursuance of said decree, and prior to the application to the court for leave to file the petitioner's said petition for preference, said railway was sold at public sale, and is now the property and in the possession of the Chicago, Terre Haute & Southeastern Railway Company. The question here presented is whether the petitioner may at this time, and under the facts of the case, be permitted to file its petition to have its said claim paid as one of the items assumed by the purchaser as a part of the consideration for the sale. In disposing of the petition for leave to file, the court must inquire into the subject-matter of the proposed petition and its relation to the other facts in the case. The vouchering of the petitioner's said claim means that the same has been investigated, passed on, and approved. It nowhere appears that the amount of money necessary to pay the same had been physically set aside. On the contrary, it was not expected that it would be paid at once. Therefore, there could be no question of a trust or right to follow the specific fund into the hands of the receiver any more than such right would follow the giving of a promissory note for an overpayment of freight. At the time the claim was vouchered, it had been standing several years. It is not clear from the petition how, if at all, the vouchered claim became a lien prior to the mortgage claims. Nor is it apparent from the petition why or how the purchaser at the sale could be charged with knowledge that petitioner was entitled to any lien prior to the mortgage indebtedness. If there was any lien, it must have been a secret lien, so much so that petitioner itself did not know of it until after the sale.

True, the petition alleges that:

"The Southern Indiana Railway Company took said sum of $9,634.75, and expended the same or a great part thereof for labor, supplies, equipment, and improvements on said line of the said the Southern Indiana Railway Company, and for interest on its bonded indebtedness, including the interest on the debt secured by mortgage of May 1, 1906, hereinafter mentioned, as your petitioner is informed and believes."

While this does not amount to a direct allegation that such disposition of the fund was made, those facts may be assumed for the purposes of this hearing. How do they operate to give petitioner any lien? As above noted, the matter stood for several years as an unadjusted open account.

In Gregg v. Metropolitan Trust Company, 197 U. S. 183, 25 Sup. Ct. 415, 49 L. Ed. 717, the claim to a lien prior to the mortgage lien was rejected upon the ground that the claim itself exhibited no special equity, although it had reference to railroad ties furnished for rail-

road repairs, some of which were still on hand and unused. Here, as there, "the case stands as one in which there has been no diversion of income by which the mortgagees have profited." "There are," says the court, "no special circumstances affecting the claim as a whole, and, if it is charged on the corpus, it can be only by laying down a general rule that such claims for supplies are entitled to precedence over a lien expressly created by mortgage recorded before the contracts for supplies were made." The court then proceeds to state that the contrary rule obtains, and, referring to Miltenberger v. Logansport Ry. Co., 106 U. S. 286, 1 Sup. Ct. 140, 27 L. Ed. 117, as the case principally relied on for giving priority to claims, says (in speaking of the allowances made in that case):

"The ground of such allowance as was made was not merely that the supplies were necessary for the preservation of the road, but that the payment was necessary to the business of the road—a very different proposition."

In the present case no such state of facts appears as would justify the court in finding that petitioner was entitled to participate in the corpus of the railroad at the expense of the prior mortgagee.

Neither do the records up to the date of sale, so far as the court has been able to ascertain, disclose any data from which a purchaser could be charged with knowledge of petitioner's right to a prior lien, or of his obligation to liquidate petitioner's claim as a part of the purchase price. If this be so, then petitioner's demand that the court shall place him in a position to make such a claim now seems to be without right, and therefore does not furnish just grounds for disturbing the sale or mulcting the purchaser. The cases of Swann v. Wright's Executor, 110 U. S. 590, 4 Sup. Ct. 235, 28 L. Ed. 252, Compton v. Jesup, 167 U. S. 1, 17 Sup. Ct. 795, 42 L. Ed. 55, Central Trust Company v. Grant Locomotive Works, 135 U. S. 207, 10 Sup. Ct. 736, 34 L. Ed. 97, Central Trust Co., etc., v. Georgia Pacific Railway Company, 87 Fed. 288, 30 C. C. A. 648, Kneeland v. Luce, 141 U. S. 491, 12 Sup. Ct. 32, 35 L. Ed. 830, and others cited by petitioners, all proceed upon the assumption that the purchaser had notice of a pending claim for a lien superior to the mortgage lien. In those cases it was properly held that the purchaser would not be heard to again contest such claims as were contemplated in the decree after the court had allowed them as preferred claims. This rests upon grounds in the nature of estoppel. In effect, the decisions in those cases, as in this, hold that the final disposition of the rights of parties whose claims are to be thereafter adjusted should be determined by the court as presented, and that the purchaser should be bound by such judgment of the court. But no such rule of law could be applied in a case where the possibility of the allowance of such a claim was not, and could not have been, in contemplation of the purchaser. Filing the claim as a general demand with the master was not such a presentation of the question of a preferred claim as the law required; and the language of the decree, "which shall have been heretofore presented to this court, either by filing an intervening petition herein or filing a claim with the special master," cannot mean less than that the purchaser should, by such filing, be advised of the character and

class of the claim so filed; otherwise, he must assume that all of the general claims may be included in the amount he must pay.

[2] Even if, as was done in Standard Oil Company v. Hawkins, 74 Fed. 395, 20 C. C. A. 468, 33 L. R. A. 739, the court might permit petitioner to elect at this late day to move the court for leave to present his claim for a preference, as in that case, so here, the order must be so restricted as to work no detriment to intervening ·rights. This principle is laid down also in Becker v. Walworth, 45 Ohio, 169, 12 N. E. 1, and in Ward v. Ward, 134 Ill. 417, 25 N. E. 1012. That one may not stand by and permit a sale without asserting his rights, and thereafter seek to assert them to the injury of the purchaser, is too well established to require citations.

[3] Whether or not the rebates upon which the petitioner's claim is based may be resisted as against public policy, or in conflict with any of the statutes, state or federal, regulating such matters does not seem to be raised in the briefs, and need not be now inquired into except to say that the case could not be relieved of that defense, if it existed, by agreement of the parties, since the public would be interested. In the judgment of the court, even were it possible by searching the records, to find some ground on which the purchaser might be charged with constructive notice of petitioner's claim, and the facts which attended its creation, so far as set out in the petition, nevertheless there could be no inference drawn from the filing of the claim and its attendant circumstances which would charge a purchaser with knowledge that petitioner could or would claim a lien superior to that of the bonds and mortgage. It would therefore be both unfair and useless to allow the filing of the petition.

The request is therefore denied.