

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José Gotay Flores<br><br>    Peticionario<br><br>              v.<br><br>Administración de Corrección<br><br>    Peticionario | Certiorari<br><br>2011 TSPR 10<br><br>180 DPR ____ |

Número del Caso: CC-2010-550

Fecha: 25 de enero de 2011

Tribunal de Apelaciones:

        Región Judicial de Ponce Panel Especial

Jueza Ponente:
                Hon. Luisa M. Colom García

Abogados de la Parte Peticionaria:

                Lcdo. Steven P. Lausell Recurt
                Lcdo. Fermín Arraiza Navas
                Lcdo. Joel Román Román

Materia: Revisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Gotay Flores
    Peticionario

v.

Administración de Corrección
    Recurrida

*Certiorari*

CC-2010-0550

RESOLUCIÓN

En San Juan, Puerto Rico, a 25 de enero de 2011.

El peticionario José Gotay Flores, nos solicita que revoquemos una sentencia dictada por el Tribunal de Apelaciones mediante la cual se confirmó una resolución emitida por la Administración de Corrección. En ella dicha agencia aplicó las disposiciones de su Reglamento para la concesión de permisos a los miembros de la población correccional para salir o residir fuera de las instituciones correccionales del Estado Libre Asociado de Puerto Rico, Reglamento Núm. 7595 de 24 de octubre de 2008, y denegó la solicitud del peticionario para ser referido al

programa de pases para salir fuera de las instituciones penales. A esos efectos, el peticionario alega que la aplicación del Reglamento Núm. 7595 a sus circunstancias viola la protección constitucional contra leyes *ex post facto* debido a que el referido reglamento fue aprobado con posterioridad a la fecha en que se cometieron los actos delictivos. Luego de examinar el recurso presentado por la parte Peticionaria y acogerlo como uno de *certiorari*, 4 L.P.R.A. Ap. XXI-A, R.19(2), se declara el mismo No Ha Lugar. Esbozamos los antecedentes fácticos de mayor relevancia que dieron origen al recurso que nos ocupa.

I

Por hechos ocurridos el 24 de septiembre de 1991, el 8 de mayo de 1992 el Tribunal de Primera Instancia dictó sentencia en contra del Sr. José Gotay Flores luego de encontrarlo culpable por los delitos de asesinato en primer grado y violación a la Ley de Armas. Al señor Gotay Flores se le impuso una pena de 108 años de reclusión.

Años más tarde, el 1 de diciembre de 2009, el señor Gotay Flores le solicitó a la Administración de Corrección, en adelante AC, que lo refiriera al programa de pases de dicha agencia. Días después la AC emitió una resolución y denegó la petición del señor Gotay Flores. Indicó que su solicitud era improcedente puesto que el Reglamento para la concesión de permisos a los miembros de la población correccional para salir o residir fuera de

las instituciones correccionales del Estado Libre Asociado de Puerto Rico, Reglamento Núm. 7595 de 24 de octubre de 2008, en adelante Reglamento Núm. 7595, excluye expresamente a los convictos por violación a la Ley de Armas. Además, la AC señalo que en virtud de la Ley Núm. 49 de 26 de mayo de 1995, según enmendada, 4 L.P.R.A. § 1136a(a)(1), los convictos por el delito de asesinato tampoco cualifican para recibir dicho privilegio.

Luego de varios trámites procesales y de impugnada la determinación de la AC ante el Tribunal de Apelaciones, el foro apelativo intermedio dictó sentencia confirmando la resolución recurrida. En ella, indicó que la aplicación retroactiva del Reglamento Núm. 7595 a la solicitud del señor Gotay Flores no iba en detrimento de la protección constitucional que prohíbe las leyes *ex post facto*. Ello, pues la Ley Núm. 49, *supra*, y el citado Reglamento Núm. 7595 establecen que los convictos por el delito de asesinato no cualifican para el privilegio solicitado.

Inconforme, el señor Gotay Flores acudió ante nos señalando que el Tribunal de Apelaciones erró al confirmar el dictamen emitido por la AC. Sustentó dicha alegación en que su solicitud debió ser evaluada bajo el Reglamento para la Concesión de Permisos a los Confinados para salir fuera de las Instituciones Penales, Reglamento Núm. 2678 aprobado el 24 de julio de 1980- vigente al momento en que el señor Gotay Flores cometió los hechos delictivos- y no el Reglamento 7595 de dicha entidad. Ello se alegó en

virtud de la cláusula constitucional que prohíbe leyes *ex post facto*.

## II

Las Constituciones de los Estados Unidos de América y de Puerto Rico, entre otras cosas, pretenden imponerle limitación al poder punitivo del Estado –ejercido por las distintas ramas de gobierno. Así, mediante la protección constitucional contra leyes *ex post facto* se le prohíbe a la Asamblea Legislativa criminalizar conducta de manera retroactiva. L. E. Chiesa Aponte, <u>Derecho Penal Sustantivo</u>, Publicaciones JTS, 2007, pág. 16. Esta protección constitucional intenta garantizar "que los ciudadanos tengan un aviso adecuado acerca de la conducta prohibida mediante las leyes penales" como también "intenta evitar una aplicación arbitraria y vengativa de los estatutos criminales". Chiesa Aponte, <u>op cit.</u>, pág. 20.

En específico, es *ex post facto* toda ley que: (1) criminaliza y castiga un acto que al momento de ser cometido no estaba tipificado como delito; (2) agrava un delito o lo hace mayor de lo que era al momento en que fue cometido; (3) altera el castigo imponiendo una pena mayor que la fijada para el delito al momento en que fue cometido; (4) altera las reglas de evidencia exigiendo menos prueba que la requerida por ley al momento en que el delito fue cometido. <u>González v. E.L.A.</u>, 167 D.P.R. 400, 408 (2006); <u>Pueblo en interés del menor F.R.F.</u>, 133 D.P.R.

172 (1993); <u>Fernández v. Rivera, Jefe de Presidio</u>, 70 D.P.R. 900 (1949).

De ordinario, la protección constitucional que prohíbe leyes *ex post facto* no se extiende a los actos judiciales, estatutos de carácter civil, órdenes administrativas, declaraciones de política pública ni reglas interpretativas o de carácter procesal. <u>González v. E.L.A.</u>, *supra*, págs. 409-410. *Véase,* además, <u>Pueblo v. Candelario Ayala</u>, 166 D.P.R. 118 (2005). Asimismo, en cuanto al ámbito administrativo, esta protección constitucional aplica únicamente cuando la reglamentación administrativa acarrea consecuencias penales. <u>González v. E.L.A.</u>, *supra*, pág. 410 *citando a* <u>Ross v. Oregon</u>, 227 U.S. 150 (1913). *C.f.* <u>Bailey v. Gardening</u>, 940 F.2d 1150, 1157 (1991). Ello es así pues mediante la aprobación de reglamentos las agencias administrativas ejercen poderes que le han sido delegados válidamente por la Asamblea Legislativa. <u>González v. E.L.A.</u>, *supra*, pág. 410.

Ahora bien, no toda ley penal o reglamento administrativo es *ex post facto*. Para que así sea catalogado, y por ende declarada inconstitucional, dicho estatuto o reglamento tiene que ser aplicado retroactivamente y ser más oneroso que la disposición legal vigente a la fecha en que se cometió el delito. <u>González v. E.L.A.</u>, *supra*, pág. 409. Cónsono con lo anterior, en <u>California Dept. of Corrections v. Morales</u>, 514 U.S. 499 (1995), el Tribunal Supremo federal resolvió

que la aplicación retroactiva de leyes aprobadas con posterioridad a la comisión de los actos delictivos no viola la referida protección constitucional siempre que dicho estatuto –o reglamento– no aumente la pena que se le impuso al confinado por la comisión de los delitos o presente suficiente riesgo de incrementar dicha pena.

Claro está, la normativa antes señalada no ignora los pronunciamientos de Weaver v. Graham, 450 U.S. 24 (1981). En esa ocasión el Tribunal Supremo federal revocó un dictamen del Tribunal Supremo del Estado de Florida mediante el cual se resolvió que la aplicación *ex post facto* de una ley estatal que reducía la cantidad de tiempo que un confinado podía restar al período de su convicción si mantenía buena conducta (bonificaciones por buena conducta) no era inconstitucional. Al así proceder, el Tribunal Supremo federal señaló que la aplicación retroactiva de dicha ley estatal sí alteraba la pena impuesta al reo. Es decir, sí se afectaban aspectos penales sustantivos. Ahora bien, vale mencionar que en la nota al calce número 12 de Weaver v. Graham, *supra*, el Tribunal Supremo federal, por voz del Juez Asociado señor Thurgood Marshall, indicó que "no ocurre una violación *ex post facto* si la aplicación retroactiva en efecto es meramente procesal, no aumenta la pena o cambia los requisitos del delito o altera la forma en que se establece culpabilidad". Weaver v. Graham, *supra*, pág.

31, n.12, *citando a* Hopt v. Utah, 110 U. S. 574, 110 U. S. 590 (1884).

Posteriormente, en Lynce v. Mathis, 519 U.S. 433 (1997), el Tribunal Supremo federal tuvo la oportunidad de distinguir las normativas pautadas en Weaver v. Graham, *supra*, y California Dept. of Corrections v. Morales, *supra*. Así, ante una ley del Estado de Florida que cancelaba unos créditos provisionales que disminuían la pena a cumplir por el confinado, sin importar que dichos créditos ya habían sido otorgados a los confinados o -como en otros casos- que éstos ya habían sido puestos en libertad, el Tribunal Supremo federal señaló que la aplicación retroactiva de esta ley iba en detrimento de la cláusula constitucional que protege contra las leyes ex post facto. Ello, pues aumentaba la pena que el confinado cumpliría. Lynce v. Mathis, *supra*, *citando a* Weaver v. Graham, *supra*.

Por otro lado, en González v. E.L.A., *supra*, nos expresamos ante la revocación del privilegio libertad bajo supervisión electrónica, concedido erróneamente. Allí, catorce convictos impugnaron su reingreso a la institución correccional tras la aprobación de la Ley Núm. 49, *supra*. Esta ley excluyó a los convictos por el delito de asesinato de dicho privilegio. A estos efectos, resolvimos que la aplicación retroactiva de la Ley Núm. 49, *supra*, no infringía la cláusula constitucional de leyes *ex post facto*. Ello, pues para el momento en que

trece de los catorce convictos cometieron los hechos delictivos no existía disposición legal alguna que regulara la concesión de libertad bajo supervisión electrónica. En otras palabras, "el programa simplemente no existía". González v. E.L.A., *supra*, pág. 415.

Sin embargo, debe tenerse presente que aun cuando el desenlace de González v. E.L.A., *supra*, fue distinto al de Weaver v. Graham, *supra* –debido a la ausencia de ley que regulara el privilegio concedido erróneamente– indicamos que lo importante en estas instancias es examinar si, en comparación con la vieja ley, el nuevo estatuto alarga la pena que cumplirá el confinado. González v. E.L.A., *supra*, pág. 415 *citando a* Weaver v. Graham, *supra*. En otras palabras, al determinar si una ley penal es más onerosa que la vigente al momento en que se cometieron los actos delictivos es necesario examinar si, en comparación con el estatuto antiguo, la nueva ley tiene el efecto de alargar o prolongar la pena impuesta que ha de cumplirse por el autor del delito.

### III

En el caso de autos, el peticionario aduce que la Administración de Corrección erró al evaluar su solicitud para el programa de pases utilizando el Reglamento 7595 y no el Reglamento 2678, ambos de dicha agencia. No le asiste la razón.

Como mencionamos anteriormente, aun cuando se ha resuelto que la protección constitucional de leyes *ex post*

*facto* aplica a reglamentación administrativa que acarrea consecuencias penales, Ross v. Oregon, *supra*, en esta ocasión los actos de la Administración de Corrección no van en detrimento de la referida protección. Ello, pues la pena que se le impuso al peticionario por la comisión del delito de asesinato y violación a la Ley de Armas no es incrementada. González v. E.L.A., *supra*; Lynce v. Mathis, *supra*; California Dept. of Corrections v. Morales, *supra*; Weaver v. Graham, *supra*. No se trata en esta ocasión, pues, de un programa administrativo que conceda bonificaciones o créditos atribuibles a la pena impuesta. Más bien, la situación ante nos involucra la concesión de un privilegio –y no un derecho– como una medida de tratamiento individualizado para el confinado.

De ninguna manera, el dictamen agencial constituye una alteración al castigo que impone una pena mayor de la que fijaba la ley al delito cuando fue cometido. La disposición constitucional *ex post facto* lo que prohíbe es la imposición de castigo más severo que el dispuesto por ley o reglamento cuando el delito ocurrió. Es evidente que estas no son las circunstancias del señor Gotay Flores.

La anterior conclusión es cónsona con la propia Ley Núm. 49, *supra*. Precisamente, el Artículo 4 del referido estatuto indica que "[l]as disposiciones de esta Ley aplicarán **a todos los convictos cumpliendo sentencia bajo la custodia y supervisión de la Administración de**

**Corrección**". Ello implica que el Reglamento 7595, *supra*, aprobado en consecución de los propósitos esbozados por la Ley Núm. 49, *supra*, es aplicable a todos los convictos según consignado en el citado estatuto.

Mediante el Voto Particular Disidente, la minoría de esta Curia intenta desvirtuar la diáfana intención legislativa de establecer una prohibición absoluta al conceder pases familiares a confinados sentenciados por el delito de asesinato. El acceder a tal contención, atentaría contra la firme política pública, el estado de derecho y el reclamo de la sociedad puertorriqueña. En su fallido análisis, olvidan que los referidos pases o permisos constituyen una medida de tratamiento y no un derecho. Más aún, la aplicación del Reglamento 7595, *supra*, al caso particular del peticionario no incide sobre la prohibición constitucional de leyes *ex post facto*.

IV

Finalmente, nos sorprenden las expresiones vertidas en el Voto Particular Disidente de la compañera Juez Asociada señora Rodríguez Rodríguez sobre la supuesta emisión "a última hora" de ésta Resolución. Al parecer, nuestra compañera olvida —para su conveniencia— que el trámite procesal interno del caso de autos no fue alterado

de forma alguna.[1]  Mas bien, el único evento que levantó suspicacia sobre dicho trámite provino de su parte cuando indicó –vía memorando– que pretendía certificar la Resolución declarando No Ha Lugar el recurso de autos **aun sin contar con la votación final de los Jueces de este Tribunal sobre un memorando previamente circulado por el Juez Asociado señor Rivera García.**  Nos parece contradictorio, incluso, errático, el que la compañera Juez Asociada señora Rodríguez Rodríguez indique que ésta Resolución se emitió "a última hora", cuando lo cierto es

[1]El caso de autos fue discutido en la reunión ordinaria del pleno de este Tribunal, celebrada el 17 de diciembre de 2010.  Días más tarde, el 11 de enero de 2011, la compañera Juez Asociada señora Rodríguez Rodríguez circuló un memorando en el cual incluyó un Voto Particular Disidente, el cual constituiría su posición en el asunto de proveerse No Ha Lugar el recurso de autos.  Ese mismo día la compañera Jueza Asociada señora Fiol Matta circuló un memorando en el cual indicó que se unía al dicho voto particular y, al día siguiente, el Juez Presidente señor Hernández Denton expresó mediante memorando la misma intención.

El 12 de enero de 2011, el Juez Asociado señor Rivera García le solicitó a la Juez Asociada señora Rodríguez Rodríguez el expediente del caso de autos para su correspondiente estudio y le solicitó, además, un término razonable para ello.  Ese mismo día el expediente fue le fue remitido.

Así las cosas, en horas de la tarde del 20 de enero de 2011, el Juez Asociado Rivera García circuló un memorando en el cual expuso su posición sobre el caso de autos y su debida recomendación.  Minutos después, la Juez Asociada señora Rodríguez Rodríguez circuló otro memorando indicando que el 21 de enero de 2011 se proponía certificar la resolución proveyendo No Ha Lugar al recurso del caso de autos conjuntamente con su voto particular. **Ello, aun cuando ninguno de los Jueces de este Tribunal había expresado su posición o emitido su voto en cuanto al memorando circulado minutos antes por el Juez Asociado señor Rivera García.**

A raíz de lo anterior, el Juez Asociado señor Rivera García circuló –ese mismo día– otro memorando en el cual indicó que todavía no era apropiado certificar resolución alguna sobre el presente caso debido a que se desconocía la votación final del Tribunal.  Por ello, recomendó posponer la disposición del caso de autos hasta que se conociera dicha votación final.  A este último memorando se unieron los Jueces Asociados señor Martínez Torres y señor Kolthoff Caraballo, y la Jueza Asociada señora Pabón Charneco.  Al día siguiente, 21 de enero de 2011, el expediente le fue remitido al Juez Asociado señor Rivera García.

El 24 de enero de 2011, el Juez Asociado señor Rivera García circuló un memorando en el cual indicó la votación final del asunto de autos para que dispusiera del caso conforme a ello.

que desde el caso de autos ha sido objeto de discusión de este Tribunal desde el 17 de diciembre de 2010. Los incidentes procesales acontecidos ante nos, hablan por sí mismos.

V

Por los fundamentos antes expuestos, se declara No Ha Lugar el recurso presentado por la parte peticionaria.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió un Voto Particular Disidente al cual se le unieron el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Gotay Flores

    Peticionario

      v.                            CC-2010-0550

Administración de
Corrección

    Recurrida

Voto particular disidente emitido por la Juez Asociada señora Rodríguez Rodríguez al que se une el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta

San Juan, Puerto Rico, a 25 de enero de 2011

   Lamento que una mayoría de este Tribunal rehúse solicitarle a la Procuradora General que se exprese sobre la controversia en este caso, a saber: qué reglamento regula la solicitud de beneficio de cierto programa de permisos para salir fuera de las instituciones correccionales, si aquél que estaba vigente al momento de que el confinado solicitante incurrió en los hechos delictivos por los cuales se encuentra confinado, o el que está vigente al momento de la solicitud.

    Ello me parece necesario pues en dos ocasiones anteriores la Procuradora General, a instancias del Tribunal de Apelaciones, había expresado la posición del Estado en el sentido de que el reglamento que corresponde utilizar en estos casos es el que estuviese vigente al momento de la comisión del delito y no cuando el confinado solicita el

beneficio del programa.[2]   De esta forma, la Procuradora General, con correcto rigor jurídico, rechazó la actuación de la Administración de Corrección que ha determinado aplicar en estas circunstancias el reglamento que está vigente actualmente.[3]   Evidentemente, ella es consciente de que la postura asumida por la Administración de Corrección es contraria a lo que manda la Constitución del Estado Libre Asociado de Puerto Rico cuando proscribe la aplicación de leyes *ex post facto*.

No logro comprender a qué obedece la renuencia de la mayoría a escuchar al principal abogado del Estado ante este Tribunal en un asunto sobre el cual ya se ha expresado a nivel del foro apelativo intermedio.   Deberíamos aprovechar instancias como éstas para pautar una norma de derecho que, claramente, es objeto de litigación continua ante el Tribunal de Apelaciones y que a todas luces, está siendo aplicada incorrectamente por la Administración de Corrección en violación a los derechos constitucionales de los confinados.

En su lugar y a última hora, el Tribunal emite una extensa Resolución cuyo efecto real, a mi juicio, es

---

[2] Véanse, *Samuel Rivera Alejando v. Administración de Corrección*, Caso Núm. KLRA-2009-433 (López Feliciano, **Hernández Serrano**, Rosario Villanueva); *José Medina Rosa v. Administración de Corrección*, Caso Núm. KLRA-2010-250 (López Feliciano, Hernández Serrano, **Birriel Cardona**).

[3] La Procurador General hace la salvedad correctamente, de que ello no supone que al confinado se le deba conceder el pase que solicita, sino meramente que su solicitud de debe evaluar de acuerdo con los criterios que se establecen en el reglamento que estaba vigente a la fecha de los hechos que dieron base a su convicción.

modificar la normativa vigente sobre los criterios para determinar cuándo la aplicación de una ley puede considerarse contraria al mandato constitucional contra leyes *ex post facto.*

Por otro lado, es evidente que este caso debe tramitarse como una apelación y no como el recurso discrecional de *certiorari* habida cuenta de las sentencias contradictorias dictadas por varios paneles del Tribunal de Apelaciones. Regla 18 (b) del Reglamento del Tribunal Supremo. 4 L.P.R.A. App. XXI-A. La mayoría del Tribunal rehúsa atender este caso como una apelación y se niega a explicar su proceder.

Porque no estoy de acuerdo con el errado proceder de la mayoría, disiento de su criterio.

I

Los hechos en este caso son sencillos y sobre ellos no hay controversia. El 8 de mayo de 1992, el Tribunal de Primera Instancia dictó sentencia contra el señor Gotay Flores por el delito de asesinato e infracciones a la Ley de Armas por hechos ocurridos en 1991. Actualmente, se encuentra en una institución penal de custodia mínima cumpliendo una pena de 108 años.

El 1ero de diciembre de 2009, el señor Gotay Flores solicitó que se le refiriera al programa de pases de la Administración de Corrección. El 4 de enero de 2010 la agencia respondió a la solicitud de la siguiente manera:

> Informa la Sra. M. Pérez, Técnica Sociopenal, que según establece el Reglamento para la concesión

de permisos a los miembros de la población correccional para salir o residir fuera de las instituciones correccionales aprobado el 24 de octubre de 2008, estipula que los casos cumpliendo sentencias por ley de armas no cualificarán para este tipo de permiso. Indican que no cualificarán para pases familiares los confinados que se encuentren [sic] cumpliendo sentencia por delitos contemplados en la Ley Núm. 49 del 26 de mayo de 1995. Que tampoco cualificarán para pases familiares confinados sentenciados por delitos de asesinato, ni de violación, incesto, sodomía y actos lascivos si la víctima fuera menor de 16 años independientemente de la fecha en que haya sido sentenciado [sic] conforme lo establece la Ley Núm. 49 antes citada.

El señor Gotay Flores solicitó reconsideración de esta determinación por considerar que atender su solicitud a base de lo que disponía el "Reglamento para la concesión de permisos a los miembros de la población correccional para salir o residir fuera de las instituciones correccionales del Estado Libre Asociado de Puerto Rico", Reglamento núm. 7595 de 24 de octubre de 2008 ("Reglamento núm. 7595"), era contrario a la protección constitucional contra leyes *ex post facto.* Éste considera que su solicitud debe evaluarse a tenor con lo que dispone el "Reglamento para la concesión de permisos a los confinados para salir fuera de las instituciones penales, Reglamento núm. 2678 de 24 de julio de 1980" ("Reglamento núm. 2678") que era el que estaba vigente al momento de los hechos que dieron base a su convicción y sentencia. Posteriormente, el señor Gotay Flores presentó un oportuno recurso de revisión administrativa ante el Tribunal de Apelaciones. En su

recurso planteó, esencialmente, lo mismo que había planteado ante el ente administrativo.

El 29 de abril de 2010, el Tribunal de Apelaciones (Arbona Lago, **Colom García** y Vizcarrondo Irizarry), emitió una sentencia en la que confirmó la determinación de la agencia de excluir al peticionario del programa de pases en virtud de la reglamentación vigente desde el 2008. El foro intermedio limitó su discusión a plantear que "[l]a concesión de esos permisos son actos discrecionales de la Administración que corresponden a una serie de consideraciones que lleva a cabo la agencia para aquellos confinados que pueden ser elegibles a tal medida de tratamiento". A renglón seguido, ese foro abordó el tema de la deferencia con la que se atienden las determinaciones administrativas y procedió a abstenerse de revisar la determinación recurrida.

Respecto al planteamiento medular del señor Gotay, el foro apelativo indicó que la agencia venía obligada a aplicarle el Reglamento 7595 por disposición expresa de la Ley núm. 49 de 1995. Esta ley enmendó la ley habilitadora de la Administración de Corrección para excluir expresamente del beneficio de poder participar en los programas de desvío y rehabilitación a aquellos confinados convictos de asesinato o violación a la Ley de Armas, entre otros delitos. 4 LPRA sec. 1136(a). La sentencia indica, citando al Reglamento 7595, que las exclusiones de la Ley núm. 49 aplican, "independientemente de la fecha en que

[los convictos] hayan sido sentenciados conforme lo establece la Ley Núm. 49 antes citada." Con lo cual, concluye que la acción de la agencia se justifica pues es lo que ordena la ley.

Inconforme nuevamente, el señor Gotay Flores presentó un escrito de apelación ante este Tribunal donde planteó que el Tribunal de Apelaciones había errado "al no resolver que la aplicación del Reglamento Núm. 7595 al recurrente viola la protección constitucional contra leyes ex post facto." Una mayoría de los miembros de este Tribunal, inexplicablemente, rehúsa atender esta controversia. No puedo validar este proceder, erróneo e incomprensible, de este Tribunal.

II

Como se apuntó, el apelante nos solicita que se revoque una sentencia que sostuvo que éste no podía beneficiarse de cierto programa de permisos para salir fuera de las instituciones correccionales para trabajar, estudiar, visitar su hogar o el de familiares con la posibilidad de permanecer allí por un corto periodo de tiempo, para participar en actividades culturales, recreativas, religiosas, o para recibir tratamiento médico incluyendo hospitalización, porque a su juicio, el Reglamento núm. 7595, vigente en la actualidad, expresamente excluía a los confinados que, como él, habían sido convictos de delitos de asesinato y de violación a la Ley de Armas. La posición del peticionario es que su

solicitud debe evaluarse bajo el reglamento que estaba vigente a la fecha de los hechos delictivos, el cual no contemplaba tal exclusión. Véase, Reglamento núm. 2678. La actuación del Estado, se alega, es violatoria de la protección constitucional contra leyes *ex post facto.* Tiene razón el apelante. Veamos brevemente.

La Sección 12 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, 1 L.P.R.A. Art. II, sec.12, prohíbe la aplicación de leyes *ex post facto.* En *González v. E.L.A.,* 167 D.P.R. 400 (2006) abundamos sobre esta disposición constitucional e indicamos que son cuatro los tipos de estatutos que consideramos *ex post facto:* 1) aquellas leyes que criminalizan y castigan un acto que al ser realizado no era delito; 2) las leyes que agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; 3) leyes que alteran el castigo imponiendo una pena mayor que la fijada para el delito al momento de ser cometido; 4) y las leyes que alteran las reglas de evidencia exigiendo menos prueba que la requerida por ley al memento de la comisión del delito para castigar al acusado o reducir el quantum de evidencia necesario para encontrarlo culpable. Véanse además, *El Pueblo de Puerto Rico en interés del menor F.R.F.,* 133 D.P.R. 172 (1993); *Fernández v. Rivera,* 70 D.P.R. 900 (1949). Esta disposición por lo tanto lo que hace es prohibir que se aplique retroactivamente una ley que agrava para el acusado su relación con el delito, la oportunidad de

defenderse, y la forma de cumplir una sentencia o su extensión.

Esta cláusula constitucional no tan sólo se utiliza para impedir la aplicación retroactiva de cierta legislación sino también cuando se trata de actos **"de naturaleza legislativa."** Por lo que la prohibición puede invocarse cuando se impugna la aplicación o derogación retrospectiva de reglamentos administrativos y ordenanzas municipales que acarrean consecuencias penales. En *Ross v. Oregon*, 227 US 150, 162-163 (1913) el Tribunal Supremo de Estados Unidos indicó lo siguiente:

> But whilst thus uniformly holding that the provision is directed against legislative, but not judicial, acts, this court with like uniformity has regarded it as reaching every form in which the legislative power or a State is exerted, whether it be a constitution, a constitutional amendment, an enactment of the legislature, a by-law or ordinance of a municipal corporation, **or a regulation or order of some other instrumentality of the State exercising delegated legislative authority.** (Énfasis nuestro.)

Y no cabe duda de que así tiene que ser pues mediante la aprobación de una ordenanza o un reglamento, las agencias administrativas o los municipios, según fuere el caso, ejercen poderes que le han sido delegados, válidamente, por la Asamblea Legislativa. Se trata pues de actos de naturaleza legislativa.

Hemos expresado que lo determinante para que un estatuto contravenga la cláusula contra leyes *ex post facto* es que "el mismo sea de aplicación retroactiva y, además, que sea más oneroso para el imputado **que el vigente a la**

**fecha en que se cometió la ofensa"**. *González Fuentes v. E.L.A., ante; Corretger Cruz v. Administración de Corrección*, 172 D.P.R. 320 (2007). Para determinar si la nueva ley es más onerosa que la vigente al momento de la comisión del delito, lo medular es, según expresa el Tribunal Supremo de Estados Unidos en el caso normativo *Weaver v. Graham*, 450 US 24, 32 n. 17 (1981), "whether the new provision **imposes greater punishment after the commission of the offense not merely whether it increases a criminal sentence.**" (Énfasis nuestro.) Véase, *Lindsey v. Washington*, 301 U.S. 397, 401 (1937). Y ello ocurre, según el Tribunal, cuando el estatuto que se aplica "lengthen[ed] the period that someone in petioner's position must spend in prison." *Íbid*, pág. 33. *Lynce v. Mathis*, 519 U.S. 433, 442 (1997). Si la ley impugnada altera las condiciones de confinamiento para hacerlas más onerosas estamos frente a un problema de aplicación de leyes *ex post facto*. *Weaver v. Graham, ante.*

Lo anterior deja claro que lo que hay que evaluar al considerar un planteamiento de aplicación *ex post facto* de una ley o regulación es si las condiciones impuestas al confinado por éstas, hacen más oneroso su convicción o confinamiento y no, necesariamente, que la ley o regulación impugnada aumente el término que debe cumplir en prisión el confinado, es decir, la pena impuesta. Y es que es evidente que si la ley que se aplica retroactivamente aumenta la pena por la que resultó convicta una persona,

estamos ante una clara violación a la cláusula contra leyes *ex post facto* pero, la protección constitucional aspira a más.

Así, una ley puede no aumentar la pena a cumplir por un delito pero al hacer más opresivo o gravoso el castigo impuesto, ésta no puede aplicarse retroactivamente por mandato de la disposición constitucional contra leyes *ex post facto.* Por ejemplo, en *In re Medley*, 134 U.S. 160 (1890), el Tribunal Supremo de Estados Unidos dispuso que una ley que exigía que un confinado que había sido convicto de un delito que requería se impusiera la pena de muerte, tuviese que permanecer en confinamiento solitario hasta su ejecución no se podía aplicar al convicto en ese caso, ya que al momento de los hechos delictivos, la legislación aplicable no exigía que se le mantuviese en confinamiento solitario.  El Tribunal concluyó que ello violaría la disposición federal contra leyes *ex post facto.  Véanse además, Cummings v. Missouri*, 4 Wall. 277 (1867); *Weaver v. Graham, ante.*

El Tribunal, en la Resolución que certifica parece concluir todo lo contrario cuando concluye que: "al determinar si una ley penal es más onerosa que la vigente al momento en que se cometieron los actos delictivos es necesario examinar si, en comparación con el estatuto antiguo, **la nueva ley tiene el efecto de alargar o prolongar la pena impuesta que ha de cumplirse por el autor del delito.**" (Énfasis nuestro.) Resolución, pág. 8.  O,

cuando indica, que "en esta ocasión los actos de la Administración de Corrección no van en detrimento de la referida protección. Ello, **pues la pena que se le impuso al peticionario por la comisión del delito de asesinato y violación a la Ley de Armas no es incrementada.**" (Énfasis nuestro.) Resolución, pág. 9. Como también cuando asevera lo siguiente: "[d]e ninguna manera, el dictamen agencial (sic) constituye una alteración al castigo **que impone una pena mayor de la que fijaba la ley al delito cuando fue cometido**", por lo que en este caso no se infringe la disposición contra leyes *ex post facto*. Resolución, pág. 9. Esta lectura reiterada de la cláusula constitucional que se interpreta hoy choca frontalmente con nuestra jurisprudencia como con la normativa expuesta por el Tribunal Supremo de Estados Unidos y tiene el efecto de, mediante una Resolución, modificar profundamente --sino revocar-- el estado de derecho hasta hoy vigente y colocarnos al margen de la Constitución de Puerto Rico y de Estados Unidos.

En *González, ante,* expresamos, específicamente, que es "incompatible con la protección contra leyes *ex post facto* aplicar retroactivamente una ley que elimina a cierto grupo de convictos la posibilidad de ser elegibles para la concesión de libertad bajo palabra o bajo supervisión electrónica" pues la eliminación retroactiva de esos beneficios "tiene el potencial de alargar el término que el convicto habrá de cumplir en reclusión." *González, supra*,

pág. 409. Por otro lado, en *Lynce v. Mathis, ante*, el Tribunal Supremo de Estados Unidos se enfrentó a una legislación del estado de Florida que prohibía que confinados convictos del delito de tentativa de asesinato, entre otros delitos, cualificaran para un programa de libertad temprana ("early release"). El Tribunal concluyó que la ley era inconstitucional porque "it made ineligible for early release a class of prisoners who were previously eligible…." *Lynce v. Mathis, ante*, pág. 75.

Destacamos, tal como señala el profesor Chiesa, que poco importa si con la ley o reglamento aplicado "el acusado pierde un derecho o una gracia legislativa; lo decisivo es que queda en peor posición que la que tenía en el momento de la comisión del delito." E. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Ed. Forum, Colombia, vol. II, 1992, sec. 19.1, pág. 548. En igual sentido, D. Nevares, *Derecho Penal Puertorriqueño*, Instituto para el Desarrollo del Derecho, San Juan, 6ta ed., 2010, págs. 97-99; J. Dressler, *Understanding Criminal Law*, 4ta ed., Lexis-Nexis, New Jersey, 2005. En *Weaver v. Graham*, 450 US 24, 30-31 (1981), el Tribunal Supremo de Estados Unidos indicó sobre este particular lo siguiente:

> Critical to relief under the *ex post facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. **Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous that**

**the law in effect on the date of the offense.**
(Énfasis nuestro.)

En *Weaver, ante,* el Tribunal Supremo abundó sobre este asunto indicando expresamente: "The presence or absence of an affirmative, enforceable right is not relevant, however, to the *ex post facto* prohibition … Thus, **even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.**" (Énfasis nuestro.) *Weaver v. Graham, ante*, págs. 30-31.

Al aplicar objetivamente la normativa someramente expuesta, la única conclusión posible es que el apelante tiene razón en su reclamo, y que la mayoría del Tribunal se equivoca al rechazar su planteamiento.

La Administración de Corrección evaluó la solicitud de pase hecha por el señor Gotay bajo un reglamento que no estaba vigente al momento en que éste cometió los hechos por los cuales fue convicto y sirve su sentencia. De acuerdo a ese reglamento, personas convictas por los delitos que fue convicto el señor Gotay no gozaban del privilegio de poder participar en el programa de pases para salir fuera de la institución penal. En 1991, cuando el apelante incurrió en la conducta delictiva por la que cumple condena, el reglamento que estaba vigente para similar programa, no excluía de sus beneficios a los convictos de asesinato y violación a la Ley de Armas como él. Con lo cual, éste podía ser considerado para este

programa que le permitía salir de la institución para trabajar recibiendo remuneración por ello, estudiar, visitar familiares y permanecer con éstos por periodos cortos de tiempo, recibir tratamiento médico y hospitalización fuera de la prisión o participar en actividades culturales, religiosas, educativas, etc.

Parece claro que al aplicarle el reglamento vigente en la actualidad, el apelante, señor Gotay, "queda en peor posición que la que tenía en el momento de la comisión del delito." *González, ante*. Ciertamente, se alarga el tiempo que está en prisión pues no puede salir de la institución incluyendo la posibilidad de residir por corto tiempo fuera de la prisión; como tampoco puede cualificar para disfrutar del programa de estudios o trabajo fuera de la institución penal. Bajo el Reglamento núm. 7495 se alteraron las condiciones de confinamiento del señor Gotay, tornando la pena que cumple en una más onerosa, que bajo el Reglamento núm. 2678, que era el que estaba vigente al momento de los hechos delictivos. Sin más, ello ofende la Constitución de Puerto Rico y la de Estados Unidos, pues ambas prohíben la aplicación de leyes *ex post facto*.

El propio Estado en dos ocasiones anteriores se ha allanado a peticiones como la del señor Gotay. Así, en *Samuel Rivera Alejando v. Administración de Corrección*, Caso Núm. KLRA-2009-433 (López Feliciano, **Hernández Serrano**, Rosario Villanueva), la Procuradora General, a petición del Tribunal de Apelaciones, compareció a expresar

su criterio sobre esta controversia y, con un encomiable sentido de responsabilidad con el cargo que ostenta, expresó al tribunal lo siguiente:

> Conforme a lo anterior la administración de Corrección aprobó el [Reglamento núm. 4851 de 1992]. Dicho reglamento establecía los criterios para determinar la elegibilidad de los confinados para participar en el programa de permisos para salir fuera de las instituciones penales y estaba vigente al momento del recurrente ser sentenciado. Sin embargo, al evaluar la solicitud del confinado, la Administración utilizó el [Reglamento núm. 7595 de 2008]. De conformidad, la agencia concluyó que bajo los parámetros del [Reglamento núm. 7595] el recurrente no cualificaba para el Programa de Pases. **No obstante, reconocemos que el Artículo II, sección 12 de nuestra Constitución prohíbe la aplicación de leyes ex post facto.** 1 L.P.R.A., Art. II, sec. 12. Dicha prohibición impide la aplicación de : 1. leyes que criminalizan y castigan un acto que al ser realizado no era delito; 2. leyes que agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; 3. *leyes que alteran el castigo imponiendo una pena mayor que la fijada para el delito al ser de ser cometido*; y 4. leyes que alteran las reglas de evidencia exigiendo menos prueba que la requerida por ley al memento de la comisión del delito para castigar al acusado o reduciendo el quántum de evidencia necesario para encontrarlo culpable. **Siendo ello así, no nos oponemos a la solicitud del recurrente de que sea evaluado para el Programa de Pases sin Custodia utilizando el Reglamento Número 4851, vigente al momento de los hechos delictivos y de emitida la sentencia en su contra.** (Énfasis en original y suplido.) (Citas omitidas.)

Al igual que la Procuradora General, considero que la solicitud del señor Gotay debe ser evaluada por el reglamento que estaba vigente al momento de los hechos que dieron base a su convicción, por lo que considero que la actuación en contrario de la Administración de Corrección, que ahora avala una mayoría del Tribunal, viola los

derechos constitucionales bajo nuestra Carta Fundamental como los derechos bajo la Constitución de Estados Unidos.

Por lo anterior, disiento.[4]


Anabelle Rodríguez Rodríguez
Juez Asociada

---

[4] Solamente para aclarar la nota al calce número 1 de la resolución emitida por la mayoría del Tribunal, es preciso indicar que en la reunión ordinaria del Pleno celebrada el 17 de diciembre de 2010, una mayoría de los integrantes de este Foro proveyó no ha lugar al recurso presentado en el caso de autos. El Juez Presidente señor Hernández Denton, la Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez, disintieron de dicho curso de acción. Inmediatamente, en la misma reunión del Pleno, la suscribiente anunció que habría de emitir un voto particular disidente de la denegatoria del recurso. Sólo restaba circular el referido voto particular y certificar la resolución de no ha lugar previamente aprobada por la mayoría del Tribunal.